United States District Court
Northern District of Indiana

CHARLES KINGERY,            )
                            )
        Petitioner,         )
                            )
vs.                         )    Civil Action No. 3:13-CV-1012 JVB
                            )
SUPERINTENDENT,             )
                            )
        Respondent.         )

**OPINION AND ORDER**

Charles Kingery, a *pro se* prisoner, is serving a 55-year sentence for a murder and robbery committed in Marion County, Indiana. *State v. Kingery*, No. 49G03-9302-CF-01748. He filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (DE 1.) The respondent argues that the petition is untimely and Kingery's sole claim procedurally defaulted, and therefore requests dismissal of the petition with prejudice. (DE 6.) For the reasons stated below, the court finds the respondent's arguments unavailing, and orders further briefing on the merits.

**I.     BACKGROUND**

This case has a convoluted and unusual procedural history. In deciding the petition, the court must presume the facts set forth by the state courts are correct. 28 U.S.C. § 2254(e)(1). It is Kingery's burden to rebut this presumption with clear and convincing evidence. *Id*. On direct appeal, the Indiana Supreme Court set forth the facts underlying this case as follows:

> Late in the afternoon of April 1, 1991, the victim, George Wildrick, arrived at Van's Tavern, an establishment which Wildrick frequently patronized. Van's Tavern was hosting a pool tournament, and about 7:00 p.m., Charles Kingery and a friend, John Smith, arrived to compete in that tournament. George Wildrick spent several hours in Van's, displaying large amounts of cash, consuming several drinks, and announcing his plan to visit later another tavern, the Goldfinger Lounge. Witnesses who spoke with George Wildrick as he left Van's Tavern at closing, between 2:30 and 3:00 a.m., testified that Wildrick again stated his plan to have another drink at the Goldfinger Lounge, and was looking for someone to join him there.

> Kingery and Smith played pool at Van's Tavern until approximately 1:00 a.m. Smith then left for home. Kingery told Smith that he intended to head home shortly. However, Melissa Haynes, the woman with whom Kingery lived, testified that Kingery did not arrive home until more than two hours later, a little after 3:00 a.m. State's witness Heidi Marter was awake that morning around 3:00 a.m. when she heard, outside her home near the Goldfinger Lounge, three gunshots. Peering out her window, she saw a person, motionless, sitting upright in a large pickup truck parked near the lounge. A man, standing outside the truck, reached inside, opened the driver's side door, lifted the person from inside the truck and placed that motionless individual on the ground. Marter then saw the man look under the truck's seats and wipe down the truck's interior, particularly the passenger area and the steering wheel. He ran his hands up and down the length of the motionless individual's body. Using a rag, the man rolled up the truck's window, left the rag in the window, shut the door and walked toward the Goldfinger Lounge.
>
> Marter left her home and drove over to the scene. She found the victim, George Wildrick, laying on his left side in a pool of blood. She quickly returned home to call the police. After notifying the police, she again looked out her window, and saw that the man whom she had seen earlier had returned. He pulled up next to the body in a small, light-colored pickup truck, got out of the truck, turned the lights of the victim's truck off, wiped down the inside of the victim's truck a second time, returned to his truck, and drove away.
>
> Witness Steven Ross was driving toward the Goldfinger Lounge around 3:30 a.m. when he saw a small white truck speeding in the opposite direction. Finding police at the lounge when he arrived, and discovering that they were looking for a white truck, he told them that he had just seen a white truck speeding away from the Goldfinger.
>
> Arriving at the crime scene at approximately 4:30 that morning, a deputy coroner recovered several items from Wildrick's body, including a pair of sunglasses. These sunglasses were later found to contain a bloody fingerprint which the State demonstrated belonged to Kingery.

*Kingery v. State*, No. 49S00-9403-CR-226, slip op. at *2-4 (Ind. Dec. 22, 1995). Following a jury trial, Kingery was found guilty of murder and robbery. *Id.* at *4. The court imposed an aggravated 55-year sentence for the murder conviction and an aggravated 15-year sentence for the robbery conviction, to be served consecutively. *Kingery v. State*, No. 49A02-1204-CR-317, slip op at *2 (Ind. Ct. App. Jan. 25, 2013).

2

Kingery appealed, raising the following claims: the evidence was insufficient to support his convictions; there was an error in the jury instructions; the trial court improperly allowed testimony which suggested to jurors that he had a prior criminal record; his Class B robbery conviction was improper based on the instructions given the jury; and the trial court erred at sentencing in several respects. *Kingery,* No. 49S00-9403-CR-226, slip op. at *2. The Indiana Supreme Court affirmed Kingery's murder conviction and sentence in all respects. *Id.* at *18. As to the robbery conviction, the court determined that Kingery was guilty of Class C robbery rather than Class B robbery. *Id.* at *11-13. The court affirmed the conviction as modified, but remanded for a new sentencing hearing on the robbery count. *Id.* at *18. However, for reasons not fully explained in the record, the resentencing hearing did not occur for nearly 18 years.[1]

In the interim, Kingery pursued state post-conviction relief, asserting numerous grounds of ineffective assistance of trial counsel.[2] *Kingery v. Indiana,* No. 49A02-0806-PC-478, slip op. at *4 (Ind. App. Ct. Nov. 19, 2008). Following several evidentiary hearings, the petition was denied. *Id.* at *4-7. Kingery appealed, and the Indiana Court of Appeals affirmed the denial of post-conviction relief. *Id.* at *25. He sought transfer to the Indiana Supreme Court, but his petition was denied on January 15, 2009. (DE 6-8 at 2.) He did not seek review in the U.S. Supreme Court. (DE 1 at 2.)

---

[1] It appears the hearing did not occur immediately after the remand due to an oversight. By the time of the resentencing hearing in 2012, the original trial judge was no longer on the bench. The newly assigned judge noted that a review of the file indicated the Indiana Supreme Court never sent a certified copy of its opinion, which would have triggered the resentencing hearing. (*See* DE 8, State Court Record, Resentencing Hearing Tr., Vol. I at 2-3.) It is unclear from the record why Kingery's counsel and/or the prosecutor did not take steps to have him resentenced in a timely fashion.

[2] The record reflects that Kingery filed a petition for post-conviction relief in April 2001. (DE 1 at 22.) Upon his request, the petition was dismissed without prejudice in November 2002. (*Id.* at 28-29.) In February 2006, Kingery field a new petition, which proceeded to a determination on the merits. (*Id.* at 29-51.)

In February 2011, Kingery filed a *pro se* motion requesting that he be resentenced on the robbery conviction in accordance with the Indiana Supreme Court's 1995 remand order. (DE 1 at 56.) The court appointed counsel to represent him. (*Id.*) Through counsel, Kingery further requested that the court vacate his murder sentence and resentence him on both counts in accordance with *Blakely v. Washington*, 542 U.S. 296 (2004). (*Id.* at 57.) The trial court denied the request as to the murder conviction, but granted the request on the robbery conviction. (*Id.* at 58.) At resentencing, the prosecutor opted not to pursue an enhanced sentence, and on March 30, 2012, Kingery was sentenced to the presumptive four-year term for robbery, to run concurrently with his 55-year sentence for the murder conviction. *Kingery v. State*, No. 49A02-1204-CR-317, slip op. at *4 (Ind. Ct. App. Jan. 25, 2013). The trial court issued a new judgment and order of conviction encompassing the complete sentence for both counts. (DE 8, State Court Record, Appellant's Appx. Vol. I, at 74-75.)

Kingery thereafter pursued a second round of direct appeals. (DE 6-15.) He did not challenge the robbery sentence that was imposed, but argued that that he was entitled to resentencing on his murder conviction in accordance with *Blakely*. (*Id*.) The Indiana Court of Appeals rejected Kingery's claim. *Kingery*, No. 49A02-1204-CR-317, slip op. at *2-7. The court concluded that under state law, the trial court lacked jurisdiction to exceed the scope of the Indiana Supreme Court's remand order and resentence Kingery on the murder conviction. *Id.* at *7. The court further concluded that Kingery was not entitled to the benefit of resentencing under *Blakely*, because his case was no longer "pending" when *Blakely* was decided. *Id.* at *4-7. The court therefore affirmed the sentence imposed by the trial court. *Id.* at *7. Kingery sought review in the Indiana Supreme Court raising his *Blakely* claim, but his petition to transfer was

denied in April 2013. (DE 6-14 at 2; DE 6-19.) He did not seek review in the U.S. Supreme Court. (DE 1 at 2.) In September 2013, he filed a federal habeas petition raising one claim: that his enhanced murder sentence violates *Blakely*. (DE 1 at 4.)

## II. ANALYSIS

Kingery's petition is governed by the provisions of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). AEDPA allows a district court to issue a writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The court may grant an application for habeas relief only if it meets the stringent requirements of 28 U.S.C. § 2254(d), set forth as follows:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under this deferential standard, a federal habeas court must "attend closely" to the decisions of state courts and "give them full effect when their findings and judgments are consistent with federal law." *Williams v. Taylor*, 529 U.S. 362, 383 (2000). A state court decision is "contrary to" federal law if the state court arrives at a conclusion opposite to that reached by the U.S. Supreme Court, or reaches an opposite result in a case involving facts

5

materially indistinguishable from relevant U.S. Supreme Court precedent. *Bell v. Cone*, 535 U.S. 685, 694 (2002). A federal court may grant habeas relief under the "unreasonable application" clause if the state court identifies the correct legal principle from U.S. Supreme Court precedent but unreasonably applies that principle to the facts of the petitioner's case. *Wiggins v. Smith,* 539 U.S. 510, 520 (2003). To warrant relief, a state court's decision must be more than incorrect or erroneous; it must be "objectively" unreasonable. *Id.* "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, —U.S.—, 131 S. Ct. 770, 786 (2011). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.*

### A. Timeliness

The respondent first argues that the petition is untimely. (DE 6 at 7-11.) Under AEDPA, habeas petitions are subject to a strict one-year statute of limitations, set forth as follows:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d).

Here, the respondent argues that Kingery's murder conviction became "final" for purposes of Section 2244(d)(1)(A) when the Indiana Supreme Court affirmed his conviction in 1995. (DE 6 at 7-11.) In the respondent's view, the petition is untimely by nearly two decades. The court disagrees. As described above, on direct appeal the Indiana Supreme Court remanded part of the case for resentencing. *Kingery,* No. 49S00-9403-CR-226, slip op. at *18. The resentencing hearing was significantly delayed through no fault of Kingery's, but when it was ultimately held in March 2012, the court issued a new judgment and order of conviction. This document set forth the new sentence imposed on the robbery conviction, as well as the 55-year sentence on the murder conviction, and ordered the two sentences to run concurrently. (DE 8, State Court Record, Appellant's Appx. Vol. I, at 72-75.) After this new judgment was entered, Kingery was afforded a second round of direct appeals. *See Kingery*, No. 49A02-1204-CR-317.

A related situation was addressed by the U.S. Supreme Court in *Burton v. Stewart*, 549 U.S. 147 (2007). In that case, the state court remanded for resentencing on direct appeal. *Id.* at 150. Before the resentencing proceedings were concluded, the petitioner filed a habeas petition in federal court. *Id.* at 151. He asserted claims regarding the constitutionality of his underlying convictions, and those claims proceeded to a determination on the merits. *Id.* After the resentencing proceedings concluded, the petitioner filed a second federal habeas petition, this time asserting claims pertaining to his sentence. *Id.* at 152. His petition was rejected as an unauthorized successive petition. *Id.* The petitioner argued that if he had "waited until state

review of his sentencing claims was complete" to file his petition, "he risked losing the opportunity to challenge his conviction in federal court due to AEDPA's 1-year statute of limitations." *Id.* at 156. The U.S. Supreme Court rejected this argument, concluding that the petitioner was misreading AEDPA. *Id.* The Court observed, "Final judgment in a criminal case means sentence." *Id.* Thus, the Court held, the federal deadline did not begin to run in the petitioner's case "until both his conviction *and* sentence became final by the conclusion of direct review or the expiration of the time for seeking such review." *Id.* at 156-57 (emphasis in original).

In a similar vein, the U.S. Supreme Court held in *Jimenez v. Quarterman*, 555 U.S. 113 (2009), that when a state grants a criminal defendant the right to file a belated direct appeal, his conviction is not "final" for purposes of 28 U.S.C. § 2244(d)(1)(A) until the belated appeal proceedings are concluded. The Court concluded that finality cannot attach until the appeals process is completed, since the petitioner's conviction remains "capable of modification through direct appeal to the state courts and to this Court on certiorari review." *Id.* at 120. Thus, "[t]he statute requires a federal court, presented with an individual's first petition for habeas relief, to make use of the date on which the entirety of the state direct appeal review process was completed." *Id.* at 121.

Based on the above case law, the court concludes that Kingery's conviction did not become "final" for purposes of Section 2244(d)(1)(A) until the state direct review proceedings concluded after his resentencing. Pursuant to *Jimenez*, the court is to "make use of the date on which the entirety of the state direct appeal review process was completed." *Jimenez*, 555 U.S. at 121. That occurred in April 2013, when the Indiana Supreme Court denied transfer after his

8

second round of direct appeals. (DE 6-14 at 2.) The federal deadline began running 90 days later when the time for seeking review in the U.S. Supreme Court expired. *See Anderson v. Litscher*, 281 F.3d 672, 674-75 (7th Cir. 2002). Kingery had one year from that date, or until approximately July 2014, to file a federal petition. 28 U.S.C. § 2244(d)(1)(A). His petition filed in September 2013 was therefore timely.

B.    **Procedural Default**

The respondent next argues that Kingery's *Blakely* claim is procedurally defaulted and cannot be considered on the merits. (*See* DE 6 at 11-13.) Before considering the merits of a claim, the court must ensure that the petitioner exhausted all available remedies in the state courts. 28 U.S.C. § 2254(b)(1)(A); *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004). Interests of comity require that the state courts be given the first opportunity to address and correct violations of their prisoner's federal rights. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). For that opportunity to be meaningful, the petitioner must fairly present his constitutional claim in one complete round of state review, including with the state court of last resort. *Baldwin v. Reese*, 541 U.S. 27, 30-31 (2004); *Boerckel*, 526 U.S. at 845. The companion procedural default doctrine, also rooted in comity concerns, precludes a federal court from reaching the merits of a claim when: (1) the claim was presented to the state courts and was denied on the basis of an adequate and independent state law procedural ground; or (2) the claim was not presented to the state courts and it is clear those courts would now find the claim procedurally barred under state law. *Coleman v. Thompson*, 501 U.S. 722, 735 (1991). A habeas petitioner can overcome a procedural default by showing cause for failing to properly present his claims in state court and a resulting prejudice. *McQuiggin v. Perkins*, —U.S.—, 133 S. Ct. 1924, 1931-33

9

(2013); *Wainwright v. Sykes*, 433 U.S. 72, 90 (1977). Alternatively, he can overcome a procedural default by establishing that the federal court's refusal to consider a defaulted claim would result in a fundamental miscarriage of justice. *House v. Bell*, 547 U.S. 518, 536 (2006).

Before turning to the application of those principles here, it is worth defining the legal basis of Kingery's claim. The constitutional right at issue is a defendant's Sixth Amendment right to a jury verdict based on proof beyond reasonable doubt. *See Apprendi v. New Jersey,* 530 U.S. 466 (2000). In a line of cases beginning with *Apprendi*, the U.S. Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490. In *Blakely*, the Court further refined the rule to hold that "statutory maximum" means the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant, not the maximum sentence a judge may impose after finding additional facts.[3] *Blakely*, 542 U.S. at 303-04. In light of the decision in *Blakely* Indiana revised its sentencing structure; under current Indiana law, if a judge imposes a sentence above the "presumptive" sentence, the enhanced sentence must be based on factual findings made by a jury. *See Smylie v. State*, 823 N.E.2d 679 (Ind. 2005). There is no question that Kingery presented a *Blakely* claim to the state courts in his second round of direct appeals. *See Kingery*, No. 49A02-1204-CR-317, slip op. at *2. However, the respondent argues that the state court

---

[3] *Apprendi* and *Blakely* have not been made retroactive to cases on collateral review. *See Wilson v. United States*, 414 F.3d 829, 831 (7th Cir. 2005) ("decisions in the *Apprendi* sequence do not apply retroactively on collateral review"). However, if a case was still "pending" when *Apprendi* or *Blakely* were decided, the defendant would be entitled to the benefit of resentencing in accordance with these cases. *See White v. Battaglia,* 454 F.3d 705, 706 (7th Cir. 2006) (petitioner could assert *Apprendi* claim even though he was convicted in 1996, since his direct appeal was still pending when *Apprendi* was decided).

10

resolved this claim on the basis of an adequate and independent state ground, thus precluding federal review. (DE 6 at 11-13.)

Under the adequate and independent state ground doctrine, "when a state court refuses to reach the merits of a petitioner's federal claims because they were not raised in accord with the state's procedural rules. . . that decision rests on independent and adequate state procedural grounds." *Richardson v. Lemke*, 745 F.3d 258, 268-69 (7th Cir. 2014) (internal citation omitted). The doctrine does not serve as a jurisdictional bar, and is instead based on "equitable considerations of federalism and comity," which ensure "that the States' interest in correcting their own mistakes is respected in all federal habeas cases." *Id.* at 268. The "adequacy" of a particular ground is a question of federal law, and a ground will be considered adequate only if the state court applies the rule in a "consistent and principled way.*"Promotor v. Pollard*, 628 F.3d 878, 885 (7th Cir. 2010). Furthermore, for the bar to apply, "[t]he state court must actually have relied on that rule—and not on a parallel or interwoven federal basis." *Richardson*, 745 F.3d at 269. Any ambiguity in the record is construed in favor of the petitioner: if it at least "fairly appears" that the state court rested its decision on a question of federal law, or that its analysis was "interwoven" with federal law, the claim may be reviewed on the merits in federal court. *Id.*

Here, in rejecting Kingery's claim, the Indiana Court of Appeals held that the trial court did not have authority to deviate from the remand instruction under Indiana law to resentence him on the murder conviction. *See Kingery*, No. 49A02-1204-CR-317, slip op. at *7. It is clear that the remand rule is a well settled principle of Indiana law. *See, e.g., Lane v. State*, 727 N.E.2d 454, 456 (Ind. Ct. App. 2000); *Jordan v. State*, 631 N.E.2d 537, 538 (Ind. Ct. App. 1994).

However, the Indiana Court of Appeals did not rely exclusively on this rule to resolve Kingery's claim. Instead, the court went on to determine that Kingery was not entitled to the benefit of resentencing under *Blakely* because his conviction was no longer "pending" when *Blakely* was decided. In the court's view, Kingery's murder conviction became "final" in 1995 when the Indiana Supreme Court issued its opinion in the first round of direct appeals; therefore, the *Blakely* decision issued in 2004 was inapplicable to his case. *Kingery*, No. 49A02-1204-CR-317, slip op. at *4-6.

The court's analysis notwithstanding, finality and the applicability of a new rule of criminal procedure announced by the U.S. Supreme Court is a matter of federal law, not state law. *See Greene v. Fisher*, —U.S—, 132 S. Ct. 38, 44 (2011) ("[A] prisoner seeking federal habeas relief may rely on new constitutional rules of criminal procedure announced before the prisoner's conviction became final. . . . Finality occurs when direct state appeals have been exhausted and a petition for writ of certiorari from this Court has become time barred or has been disposed of."); *Davis v. United States*, —U.S—, 131 S. Ct. 2419, 2430 (2011) ("[N]ewly announced rules of constitutional criminal procedure must apply retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception."); *Griffith v. Kentucky*, 479 U.S. 314, 321-22 & n. 6 (1987) (defining "final," for retroactively purposes, to mean "a case in which a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied," and concluding that "failure to apply a newly declared constitutional rule to criminal cases pending on direct review violates basic norms of constitutional adjudication").

Because it fairly appears that the state court's resolution of Kingery's claim was based on or at least "interwoven" with federal law, the adequate and independent state ground doctrine does not bar this court's review of the claim. *See Richardson*, 745 F.3d at 269. Accordingly, the respondent's request for dismissal of the petition will be denied. In the interest of justice, the respondent's request for an additional opportunity to brief the merits of the petition will be granted. (*See* DE 6 at 14 n. 5.)

## IV. CONCLUSION

For the reasons set forth above, the respondent's request for dismissal of the petition (DE 6) is **DENIED**. The respondent is **GRANTED** to and including **August 29, 2014**, to file a supplemental return addressing the merits of the petition. The petitioner is **GRANTED** to and including **September 30, 2014**, to file a traverse responding to the state's arguments.

**SO ORDERED** on June 2, 2014.

 s/ Joseph S. Van Bokkelen
Joseph S. Van Bokkelen
United States District Judge
Hammond Division